No. 85-403

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MARRIAGE OF
MABLE RINGLING ANDERSON,

        Petitioner and Appellant,

   and

RUSSELL ALVIN ANDERSON,

        Respondent and Respondent.

_____

APPEAL FROM:  District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lineberger & Harris; Peter S. Lineberger, Bozeman,
Montana
Kelly M. Hogan, Bozeman, Montana

    For Respondent:

        Jardine, McCarthy & Grauman; John Jardine, Whitehall,
Montana
Berg, Coil, Stokes & Tollefson; Ben Berg, Bozeman,
Montana

_____

Submitted on Briefs: Dec. 19, 1985

Decided:  APR 3 - 1986

Filed:  APR 3 - 1986

_____
             Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The wife appeals from a judgment and order of the Madison County District Court dividing the marital estate between the parties. She claims that the District Court abused its discretion by miscalculating the value of certain marital assets and inequitably dividing the marital estate, and that the District Court's decision was not based on substantial credible evidence. We affirm in part and reverse and remand for additional findings.

Mabel Ringling and Russell Anderson were married on November 12, 1949. Before their separation in May 1981 and their divorce in April 1985, they jointly acquired and operated ranch properties. The down payment on the Harrison Ranch, the first property acquired, was made possible by financial assistance from the wife's family. The wife's family later partially financed some additional property and farm equipment for the ranch. The parties repaid loans from the family during the course of their marriage. In 1968, the parties acquired additional properties using jointly held assets. The parties negotiated a sale of these properties in 1976, reserving 191 acres of the Harrison Ranch for their home. The proceeds from the sales were initially deposited into joint accounts and securities. Later, after their separation, the parties agreed to divide the payments equally. The wife has occupied the Harrison Ranch since their separation.

In December 1978, the parties purchased a one-half interest in the "Bruce-Ridder contract." The husband testified that, when he and the wife separated, they agreed she would have the Harrison Ranch, he would have the

Bruce-Ridder contract and that these were about equal in value. The wife disputes both the agreement and the valuation of this contract.

The husband, in partnership with others, entered into two business ventures, the "Cameron Group" investment and the "Blue Anchor Bar and Cafe" in 1980 and 1981. The District Court found that he invested $21,000 of marital funds; that these investments, made only in the husband's name, have proved unprofitable; and that the husband currently discharges these obligations through monthly payments.

Prior to their separation, the parties made a number of other investments using jointly held funds. Some lost money. Some were profitable. Generally, the parties shared the losses and profits equally.

The District Court excluded the cash value of one-half of the investments in the Cameron Group and Blue Anchor Bar and Cafe, in addition to the wife's share of her family trust, from the net value of the marital estate. The wife received her family trust shares and the cash value of these investments. The District Court then divided the remaining amount equally, awarded the Harrison Ranch to the wife and awarded the Bruce-Ridder contract to the husband. They shared the income from the ranch sales equally. The husband also received his interest in the Cameron Group and Blue Anchor Bar and Cafe investments, some securities, his current home in Butte, one-half interest in his business partnership, and his personal property. The wife also received securities, her Arabian horse breeding business, her personal property, and some miscellaneous assets.

In order to effect equal distribution, the District Court ordered the wife to pay the husband $82,912.24 or

3

assign to him the equivalent of that sum from the ranch sale contracts.

We address two issues on appeal:

(1)  Did the District Court correctly value the marital assets and the total marital estate?

(2)  Did the District Court equitably divide the marital estate?

The parties agree on the standard of review.

> . . . In dividing property in a marriage dissolution the District Court has far-reaching discretion and its judgment will not be altered without a showing of clear abuse of discretion. The test of abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice . . . [Citations omitted.]

In re Marriage of Perry (Mont. 1985), 704 P.2d 41, 43, 42 St.Rep. 1101, 1104.

The wife argues in the first issue that the District Court clearly abused its discretion by accepting the husband's valuations of assets and the total estate. The evidence shows no substantial difference between the parties' valuation of assets claimed by and assigned to the wife. The parties disagree only on the value of the Bruce-Ridder contract, the Cameron Group, the Blue Anchor Bar and Cafe, and the husband's share of the R & J Amusements business, all claimed by and assigned to the husband.

The District Court expressly valued the Bruce-Ridder contract using a 25% discount of the net value, with the husband's interest then valued at $100,766.63. The wife argues that a discount in the value is unrealistic when the balance of the contract was due within one year of the trial date, as in this case. The husband testified that applying a discount of 25% is a normal procedure in the purchase and sale of contracts in the secondary market. He also testified

4

that the upcoming balloon payment would probably not be made. As we stated in Marriage of Summerfelt (Mont. 1984), 688 P.2d 8, 11, 41 St.Rep. 1775, 1778, the fair market value of a contract rarely, if ever, equals the balance due. Under these circumstances, the District Court did not abuse its discretion when he adopted the husband's valuation of the Bruce-Ridder contract.

The District Court found that the parties had orally agreed the wife would receive the Harrison Ranch and the husband would receive the interest in the Bruce-Ridder contract and found that these properties were substantially equal in value. The wife contends the District Court abused its discretion in finding the parties reached an agreement on this division of property. The wife's past financial statements listed the ranch as her property and the husband's financial statements listed the Bruce-Ridder contract as his property. The wife lived at the ranch and testified that, up to the time of trial, this division had been carried out. During the husband's testimony on the agreement, she objected only that the testimony was inadmissible as evidence of compromise negotiations. Even ignoring his testimony, the District Court had sufficient evidence with the wife's testimony and the parties' financial statements to award the Harrison Ranch to the wife and the Bruce-Ridder contract to the husband. We find no abuse of discretion on this point.

The District Court's finding that the properties were approximately equal in value is harmless error. Erroneous findings of fact that are not necessary to support the District Court's decision are not grounds for reversal. Eaton v. Morse (Mont. 1984), 687 P.2d 1004, 1010, 41 St.Rep. 1708, 1715. Prior to their separation, the parties together owned the Harrison Ranch, valued at about $253,000 and

one-half of the Bruce-Ridder contract, with a face value of about $135,000. Clearly these are not equal in value. However, the value of these assets did not affect which party received them and the lack of equivalent value had no effect on the overall equitable division of property. Thus, this finding, although erroneous, is unnecessary to support the District Court's decision and is harmless. Therefore, we decline to reverse the decision on this basis.

The financial statements submitted by the parties reflect contradicting values of the Cameron Group and the Blue Anchor Bar and Cafe. The wife asks for a return of one-half of the joint funds invested in these ventures. She questions the District Court's apparent acceptance of the husband's valuation of the net value of the properties and its finding that $15,000 and $6,000, respectively, of joint funds were invested initially. She concurs with the District Court's reduction of the marital estate by one-half of the amount of joint funds invested.

This Court will not disturb a district court's findings unless there is a clear preponderance of evidence against such findings, Cameron v. Cameron (1978), 179 Mont. 219, 227, 587 P.2d 939, 944. In this case, the record shows no support for valuing the joint funds invested in Cameron Group at $15,000. The husband's financial statement suggests an investment of $23,000 and the wife's evidence, part of the husband's tax return, shows a contribution of $20,000. The evidence on the amount of joint funds invested in the Blue Anchor Bar and Cafe is unclear as well. Since the evidence does not support the finding that a total of $21,000 of joint funds were invested in these ventures, we remand to the District Court for new findings on the amount of joint funds invested.

6

The difference in the parties' estimates of the total net value of the marital estate, excluding the Bruce-Ridder contract, result from the difference in their estimates of the net values of the Cameron Group, the Blue Anchor Bar and Cafe, and R & J Amusements. The District Court made no specific findings on the value of each of these investments and valued the total marital estate at $1,776,024.49. This finding must be reversed for lack of supporting evidence.

Using the husband's valuation of their net worth, which did not include $10,000 worth of the wife's personal property, the total comes to $1,716,024.49. Using the wife's statements of value, the total net worth comes to $1,832,165.83. Neither figure reflects that used by the District Court, although a mathematical error may explain the difference between the District Court's and the husband's figures. This Court cannot determine the net worth from the findings. Given the wide disparity between the parties' valuations and an apparent mathematical error on the part of the District Court, we reverse and remand for findings which reflect the basis of the net worth.

The wife questions the District Court's equal division of marital assets in the second issue. She asserts that without her family's funds and borrowing power, the parties would not have acquired their marital estate and wants a substantially larger share of the estate on this basis.

This Court will not disturb an apportionment made by the District Court "unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." In re Marriage of Brown (1978), 179 Mont. 417, 422, 587 P.2d 361, 364. Section 40-4-202, MCA, requires a district court to consider property received by gift or

7

bequest when apportioning marital assets. In re Marriage of Herron (1980), 186 Mont. 396, 401, 608 P.2d 97, 99-100. It goes on to require a District Court to consider the contributions of the non-acquiring spouse when dividing the property. "In determining the exact distribution of this type of marital asset, no set formula can be established as to how the assets should be equitably distributed. Each case has to be decided on its own merits." Herron, supra. In this case, funds borrowed from the wife's family during the early years of the marriage were mostly repaid from the parties' joint funds. Money inherited from the wife's family was invested in jointly-held property. The record shows the substantial marital estate resulted from the joint efforts of both parties in contributing to the maintenance and appreciation of their property throughout their thirty-five years of marriage. Where a gift or inheritance is not traceable and both parties contribute to the increasing value, "it is inequitable to award the non-acquiring spouse only a fraction of the value of the asset on dissolution." Herron, 186 Mont. at 404, 608 P.2d at 101. We hold that the District Court's division of property is an equitable one and shows no abuse of discretion.

We reverse and remand for additional findings consistent with the above opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

John F. Sheehy

William E. Hunt Sr.
Justices

9